on behalf of Gene Plummer. I would like to reserve two minutes for rebuttal. Ms. Plummer raises three issues on appeal, one regarding counsel and two evidentiary issues. I'd like to focus on the substitution of counsel issue. Mr. Plummer was arrested in January of 2011 for violating his supervised release. Would you speak into the microphone, please? Thank you. The alleged violation was the same assault from which this appeal arises, and CJA attorney Cameron Morgan was appointed on January 18th. The next time Mr. Plummer saw Mr. Morgan was nearly four months later, after he was indicted in this case. He then saw him again at a hearing to deny the supervised release allegation. One week later, he filed a motion to substitute counsel. By the time Mr. Plummer appeared in court on May 23rd, he had gone without a single private consultation with his lawyer for over four months. This is the constructive denial of counsel. Reversal is required. This Court has traditionally examined three factors in determining whether the denial of motion to substitute counsel violates the Sixth Amendment, but that test aids the ultimate question, which is whether there has been a constructive denial of counsel. And here, although Mr. Plummer would prevail based on the three-factor test, he should also prevail by asking the question directly, does an attorney's refusal to engage in private consultation with his client violate the Sixth Amendment? Even after Mr. Plummer filed this motion on May 16th, his counsel did not go meet with him. In fact, all that happened after Mr. Plummer filed the motion is counsel stopped trying to get discovery, because he thought, I'm not going to be the lawyer on this case anymore. And even after the hearing, during which Mr. Plummer made it very clear that he desired to meet with his attorney, counsel told the judge he had no need to meet with Mr. Plummer. This is the denial of counsel. Even when the court – if the court said you can't meet with your client, that would clearly be the denial of counsel. This Court has even held that where a defendant refuses to speak to his lawyer, that's the denial of counsel. Well, now, let me understand the facts here. He was arrested on – this is an appeal from the assault conviction, is that correct? That's correct. He was arrested on May 3rd, 2011, on the assault conviction, is that correct? He was already in custody. I understand that. But the question is, on this conviction, he was arrested on May 3rd. He had been in custody since January 18th, as I understand it, on the supervised release. Is that correct? He had been in custody since January 7th on the supervised release. On January 18th – So could I – now you've confused me a little bit, so I don't mean to interrupt. Go ahead. He was arrested in January because of this incident, right? Yes. And he remained in custody? Yes. In May, he was indicted on the assault charge? That's correct. All right. Okay, then forgive me for interrupting. Thank you. So the docket will reflect an arrest in May, but in reality, he was in custody in January, and he remained in custody from January until now. He has not been out of custody at all. And the arrest in January was for a probation violation arising out of this incident, is that right? That's correct. All right. And so he had been in custody for four months. His lawyer had done nothing to investigate the assault. Whether we consider the assault the supervised release allegation or what eventually became the indictment, it was an assault. It was an assault on a reservation. The victim was his sister's boyfriend. All of the witnesses were family members or friends who lived in the immediate vicinity. This is a case where there's no doubt that there I'm sorry. I'm sorry. There was something counsel could have done? Before receiving discovery. Both the court, defense counsel, and the government's position is there was nothing that counsel could have done because he had not yet received discovery. Well, the first question arises is why didn't he request discovery for four months? He did request discovery, I thought. He requested discovery on May 6th. Where is that in the record? When I say that, how do we know that's the first time he requested discovery, please? What he tells us is that he sent a letter on May 6th. He doesn't say that he hasn't requested discovery before that, but he says he has no discovery and that he requested it on May 6th. Right. But during the colloquy, Mr. Plummer indicated that there was some discovery from, did he say Flagstaff? From Flagstaff. Does that mean, what does that mean? Is that, is that, he specifically said there were some police reports. Does that arise out of this incident? Yes. Okay. So he had some discovery. The client apparently received some paperwork from the first attorney in this case who was a public defender. The public defender had the conflict off the case, and Mr. Plummer, there was one more attorney. I'm not sure what happened to that attorney. I think it had something to do with Flagstaff versus Phoenix. And then Mr. Morgan was appointed in Phoenix. When? On January 18th. Okay. So the first changeovers only account for 10 days or so. Ten days. I see. All right. So when, during the plea colloquy, it sounded to me as though there were police reports that had been delivered arising out of this incident. To whom were they delivered? It appears from the record that they were delivered to the first attorney in this matter, who was in Flagstaff, who then gave them to Mr. Plummer. So Mr. Plummer had something. He just didn't have full discovery. And what's clear is that Mr. Morgan had nothing. And so Mr. Plummer had the desire to meet with Mr. Morgan, and Mr. Morgan refused to meet with him until he received discovery. Well, what he said was that he was waiting to see if he was going to be charged with the assault. Yes. But he was already appointed to represent him to defend against the assault and the supervised release violation. And so there's no reason why he needed to wait to see if he was going to be charged with the assault. I mean, the role of defense counsel is not so anemic that camping out, which is exactly the words that Mr. Morgan used, camping out to wait to see if an indictment comes down constitutes effective representation. Counsel, since your time is fleeting, could I ask a question? What more should the district court judge have done? He held an ex parte hearing. There was a chance to respond at that hearing. What more should the district court judge have done? Well, I think I could answer that in both in terms of what more he should have done and what less he should have done. What more he should have done is asked Mr. Plummer, why is it that you need to meet with your attorney? What are these motions that you wish that your attorney would file? And asked Mr. — in terms of what less he should have done, he immediately began to accuse Mr. Plummer of lying. He said that he had made false representations to the court, that he was going to get in big trouble. If he did it again, he would get into even more serious trouble. The purpose of the colloquy is to determine what is the conflict and whether the court can do something to ease the distrust and dissatisfaction of the client. What case supports your theory on this, then, that he should have pursued in greater detail why there was a conflict? There are quite a few cases. I believe I cited them in my brief. I'm in a doubt. Well, you cited the Long case, but that case is quite different, if I recall. But at any rate, let me — well, go ahead. I'm sorry. What's clear is that the court needs to ask enough so that he can understand what the conflict is. Here, he asked one question, which is, what's your problem? Mr. Plummer started to say his problem, and the court immediately began to accuse him of making false representations. Now, they were not false representations. Mr. Morgan made it clear, yes, he has been in custody since January, and no, I haven't met with him once. So, again, in Adelso-Guzman, the — this Court says that one of the purposes of the inquiry is to ease the client's distrust and dissatisfaction. In this case, all the inquiry did was heighten his distrust and dissatisfaction. The court basically said that it was acceptable that the attorney had not met once with his client in four months. All right. Again, looking at the time, let me ask another question. All the witnesses to the assault appeared to have identified Mr. Plummer as the assailant. Why doesn't that render, as you challenged in your brief, the evidentiary ruling as harmless as they go towards Plummer's identification? I think that all of the witnesses in the case recounted highly different series of events. There's only one other witness in the case who even identified Mr. Plummer as having stabbed Mr. Clark. And that witness said that Mr. Plummer used his right hand, whereas Mr. Clark said that he used his left hand. Which witness is that, please? I think it was Brian Teller. Teller. Yes. And ordinarily that might not be that significant, but Brian Teller said that he was holding Mr. Plummer's left hand. So it's not that every witness in this case identified Mr. Plummer. It seemed like there was a melee. In fact, the victim in this case on the day after the offense said that five or six people came and attacked him. They were all kicking him and hitting him while he was on the ground, and he didn't see anybody with a weapon. So in terms of, yes, there are many witnesses that appear to say that Mr. Plummer was involved. Counsel, you're out of time. Thank you. May it please the court? My name is Carla Hodes-Delore, representing the government. I'd first like to begin by correcting a misstatement of the record, or I don't know if I'll say misstatement, but in the record when the defense attorney held, when the court held the ex-party hearing with the defense attorney about the motion for substitution of counsel, the defense attorney testified that he had been camped out waiting to see if an indictment was going to come down. And on page three of the sealed transcript, the defense attorney said, I've discussed the matter with Mr. Plummer. So the notion that the defense attorney had not met with Mr. Plummer for four months in this case is a misstatement. The defense attorney directly said, I've discussed the matter with Mr. Plummer. I don't want the court to think I haven't done my duty. And then on page four, the court specifically asked defense counsel, you have talked with him, haven't you? And the defense attorney stated, yes, I've talked with him at court. Now, he might not have had a private consultation with him at the CCA, but the defense attorney stated that the reason he hadn't gone out to the CCA yet was because he was specifically waiting for the discovery to come down in this motion. I read that as he had talked to him that day before they came into court. I had read – well, I did, too. I did, too. Defendants clearly saying he's never had a chance to talk with his lawyer about this case, and there's no correction of that in the record that I can see. I – in fact, there's confirmation, it seems to me. Isn't opposing counsel's point well taken, that the judge acknowledged that there hadn't been a conversation and that was okay because discovery hadn't been delivered? Well, I had read it differently when he said, I've discussed the matter with Mr. Plummer. To me, that stated that he had discussed the matter previously, whether it was regard to the supervised release violation. But regardless, the – it was still okay because there still was no irreconcilable conflict by the defendant and his attorney. Well, the conflict is pretty clearly stated. The defendant is complaining that his lawyer hasn't met with him and he's been in jail for four months, counsel. He was arrested in January for the supervised release violation. But then the indictment on the stabbing didn't come until May 3rd and then just  What difference does that make? Could I – forgive me for interrupting, but what difference does that make? He'd been in jail for four months and the same lawyer was representing him, right, on – about the same incident? Right. Well, what had happened is the defense attorney, when he was representing him or appointed in January, he filed two motions to continue the admit-deny hearing on the supervised release violation because he hadn't received discovery. He didn't want to, I understandably so, couldn't really do anything regarding the supervised release violation or make any admissions because that could impact the later indictment and stabbing. It just seems to me that the elephant in the room is that this assault occurred in a very small community. It seems like just about everybody had been drinking. Months went by. In fact, he wasn't even arrested until something like 14 months had gone by. So a lot of time. And sure enough, at trial, just about everybody changed their story. So why is opposing counsel wrong when she says defense counsel certainly had things he could do, namely interview the witnesses? Well, I think the defense counsel could have had a better opportunity to see exactly who he needed to interview and the shape of the case taking forward once he received the discovery and the police reports. And perhaps better yet, once he talked to his client. Well, the fact is, is after the, after the ex-party hearing, the defend, the government did provide. Can we talk about the hearing in May? Correct. After the hearing in May, the government did provide discovery to the defendant and defense attorney. And he filed a motion to continue stating, I've received discovery. I'd like to continue because I need to conduct more discovery. And what I think is really telling is then in his August 16th motion to continue, defense counsel stated he needed additional time to interview witnesses. And what I think is key is the next part where he says, I need to find witnesses the defendant has identified but were not named in the police reports. And that statement right there shows that the defendant and his attorney are talking about the case, discussing the case, and collaborating on how best to go forward with the case. Isn't that almost, how many months later is that? That was in, well, that was in August that he did the motion to continue. But what it's showing is that. Is that 18 months after the assault? The assault occurred in October of 2009. But the indictment just came down in May. So this comes back to my question. What difference does it make that the indictment had just come down? Because the indictment is what is before the district court at the time. The district court. Well, this is the same lawyer who represented him as of January. And it's about the same assault. Correct. And it shows that once the attorney got the discovery from the government, he proceeded with the case. And I think he was waiting to see what exactly came forward in the discovery in the police reports to determine how best to investigate the case, which he clearly did. In the plea colloquy, he indicates that he was going to be asking for another three-month continuance because he was getting ready to go out of the country. What about that? Well, he stated he needed to do additional discovery. And I cannot remember how long he was going to be out of the country for. But he did need to do the additional discovery and talk to the people that the defendant had identified. And what I think is even more telling in addition to this is the defense counsel or the defendant never again complained about his representation with his attorney. And there was no indication through the hearings or the trial that there was a significant breakdown in communication between the defendant and his attorney or that there was an irreconcilable conflict. After the court had its ex-party motion, there was nothing else further from the defendant. And it's clear from the August 16th motion to continue that the defense attorney was in contact with this defendant and working on his case and following up on things. Why did the district court, in your view in reading this record, accuse the defendant of making misrepresentation? I think what happened is because the defendant filed his motion for substitution of counsel was a form motion where you just filled in the blanks. And he had stated that he had been in custody since January. And I think the district court was under the initial misapprehension that he had only been in custody since May when he was originally indicted on this case. So I think the court accusing him of lying was the court's misapprehension of when exactly, not realizing that it really was in January that he was arrested. But isn't that why there certainly wasn't any indication in this colloquy that another motion for substitution of counsel was going to be well received? The defendant had filed a motion. He knew how to file it. He could have spoken up at a pretrial conference or filed another motion. And whether or not he still could have made his grievances known to the court and still continue to complain. Right. But I'm just surprised that the government's relying on his failure to file a second motion given how this one was received. He was accused of lying and he wasn't lying. And the defense attorney set the court straight on the court's misunderstanding of that. Right. But the thing, but regardless of whether the defendant filed, there was no other indication throughout the rest of the case that there was a breakdown in communication between them or that there was an irreconcilable conflict between them. And it appeared, based on the defendant's motion, the defense attorney's motions to continue, that they were, in fact, having discussions about the case of Polano. But the district court said that you're going to have meaningful communication in the future. Correct. And when discovery came through, that's exactly what started to happen. Then the defense attorney was following up on the discovery and interviewing the witnesses that the defendant identified that were not in the police reports. That takes me back to the initial questioning by the district court judge. He did not pursue, when he said there's a conflict, he didn't pursue and ask him about the conflict and how long it had gone on. He didn't continue with his conversation. The court did ask the defendant, what is the problem? What do you want the, what do you want your defense attorney to do? And the defendant said, I want him to file motions. I can find specifically in the transcript where he said that. All right. Well, let's assume he said that. But he said, I want him to file. And the court was of the mind of, until you have discovery, I mean, the defense attorney was saying, until I have discovery and can really find out what the case is about, what I'm dealing with as far as the police reports and what everyone is saying, I really can't do much more else at this point. And the defendant, didn't the defendant say that he hasn't talked to me about what the government is going to use against me? Excuse me. I'm sorry. I think the defendant said something about he hasn't talked to me about what the government is going to use against me. And the defense attorney didn't know that yet. So, but the, it's again, like I said, it's, I believe it's clear that after the hearing and once the, the, with the August 16th motion to continue, that it was clear that they, the defendant and the attorney were talking and collaborating and working on the case. And so there was not an effective denial of counsel in this case. Thank you counsel. Okay. Thank you. We'll put another minute on the clock if you like. I just have three points. One is even after the lawyer cleared up the initial apprehension, misapprehension that the judge had, that Mr. Plummer was lying, the judge accused Mr. Plummer of lying again, right after that. And so this is not a court that was hospitable to this kind of complaint. In fact, my second point is that the judge told him, you can't file documents such as this with this court. You're going to get yourself in serious trouble again. So the government argues that he should have filed another motion when the first motion was treated in this manner, where he was accused of lying and told that filing motions like this would get into serious trouble. And my third point is that the fact that in August of 2000, August of 2011, 20 months after the assault and seven months after Mr. Morgan was appointed, he's finally attempting to interview witnesses that the defendant identified that were not in the police report indicates that the defendant had information to provide to his lawyer that would not be found in the discovery, which is why defense counsel needed to meet with his client. Thank you, counsel. Thank you both for your helpful argument.
judges: Schroeder, Nelson, Christen